UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

**CIVIL ACTION NO. 14-156-DLB**

**JOANIE WOLFENBARGER DYER**                                                **PLAINTIFF**

**vs.**              **MEMORANDUM OPINION AND ORDER**

**CAROLYN W. COLVIN, Acting**
**Commissioner of Social Security**                                   **DEFENDANT**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On April 29, 2011, Plaintiff Joanie Wolfenbarger Dyer protectively filed her application for Supplemental Security Income ("SSI"), alleging disability as of March 25, 2011. (Tr. 239-49). Plaintiff's claim was denied initially and on reconsideration. (Tr. 278-81 and 185-88). On March 26, 2013, Administrative Law Judge Maria Hodges conducted an administrative hearing at Plaintiff's request. (Tr. 59-87). ALJ Hodges ruled that Plaintiff was not entitled to benefits on April 18, 2013.[1] (Tr. 39-58). This decision became the final

---

1) This was not Plaintiff's first attempt to obtain benefits. As ALJ Hodges noted, Plaintiff filed Title II and Title XVI applications in 2006 and 2008. (Tr. 42). None of these applications yielded favorable results for Plaintiff. (*Id.*). ALJ Hodges explained that there was "no evidence of record to form a basis to reopen the prior applications." (*Id.*).

1

decision of the Commissioner when the Appeals Council denied review on August 22, 2014. (Tr. 1-7).

On October 26, 2014, Plaintiff filed the instant action. (Doc. # 1). This matter has culminated in cross motions for summary judgment, which are now ripe for the Court's review. (Docs. # 22 and 27).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts

from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### *B.     The ALJ's Determination*

At Step 1, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the application date. (Tr. 44). At Step 2, the ALJ determined that Plaintiff has the following severe impairments: (1) history of coronary artery disease (status post-stenting) with carotid artery stenosis without infarction; (2) COPD (chronic obstructive pulmonary disease); (3) acromioclavicular joint crepitus of the right shoulder; (4) degenerative disc disease of the cervical spine; (5) status post-bilateral carpal tunnel release; (6) history of bipolar disorder; (7) anxiety disorder with post-traumatic stress disorder (PTSD) features; and (8) pain disorder. (*Id.*).

At Step 3, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to, an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 46-48). Specifically, the ALJ found that Plaintiff's cervical spine, right shoulder and bilateral carpal tunnel syndrome do not meet or equal any of the subsections of Listing 1.00 (musculoskeletal system) or Listing 11.00 (neurological system) because "[a]ll recent evaluations show she is neurologically intact and she has had no EMB/NCV studies to show radiculopathy [or] neuropathy." (*Id.*). The ALJ also concluded that Plaintiff's breathing impairment does not meet or equal any of the subsections of Listing 3.00 (respiratory system). (*Id.*). In support of this finding, the ALJ noted that Plaintiff has been prescribed breathing medication, including an inhaler, but does

not require oxygen and has not been hospitalized recently for any breathing-related disorder. (*Id.*). Finally, the ALJ found that Plaintiff's mental impairments do not meet or equal Listing 12.04 (affective disorders), Listing 12.06 (anxiety-related disorders) or Listing 12.07 (somatoform disorders) because she manages many activities associated with daily living and has not experienced any extended episodes of decompensation. (*Id.*).

At Step 4, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), except:

> stand/walk six hours total in an eight-hour workday; sit six hours total in an eight-hour workday; no more than frequent pushing/pulling with the right upper extremities; occasionally climb stairs/ramps, balance, kneel, crouch or crawl; never climb ladders/ropes/scaffolds; frequently handle (seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands) with both upper extremities as well as overhead reaching; and should avoid concentrated exposure to extreme cold, heat or humidity, full body vibration, fumes, odors, dust or gases, and all hazards (unprotected heights and dangerous machinery). Mentally, she would be able to understand/remember/carry out simple work instructions and procedures requiring brief learning periods; sustain concentration, effort, and pace for simple work tasks requiring little independent judgment and involving minimal variation as well as doing so at requisite schedules of works and breaks; interact frequently as needed with supervisors and co-workers sufficiently for task completion yet requiring no more than occasional interaction with the public; and adapt adequately to situational conditions and changes with reasonable support and structure.

(Tr. 48). The ALJ further noted that Plaintiff is unable to perform past relevant work as an automatic coil machine operator, embossing machine operator, automobile parts inspector and packager. (Tr. 51).

Accordingly, the ALJ proceeded to the final step of the sequential evaluation. At Step 5, the ALJ found that there are a significant number of jobs in the national economy that Plaintiff could perform. (Tr. 52). The ALJ based this conclusion on testimony from a vocational expert ("VE"), in response to a hypothetical question assuming an individual of

Plaintiff's age, education, work experience, and RFC. (*Id.*). The VE testified that a hypothetical individual with Plaintiff's vocational profile and RFC could find light work as an edging machine feeder (30,000 nationally/1,000 regionally), bakery wrapper (20,000 nationally/2,000 regionally) or cardboard inserter (20,000 nationally/800 regionally). The VE further testified that a hypothetical individual with Plaintiff's vocational profile and RFC could find sedentary work as a grader/sorter (35,000 nationally/1,000 regionally), bench worker (30,000 nationally/1,500 regionally) or motor polarizer (25,000 nationally/1,000 regionally). (*Id.*). Based on the testimony of the VE and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff is capable of making a successful adjustment to other work and thus concluded that she was not under a "disability," as defined by the Social Security Act. (*Id.*).

### C. *Plaintiff's Arguments*

Plaintiff advances four arguments on appeal. (Doc. # 15-2). First, Plaintiff argues that the ALJ erroneously classified her diabetes and blurry vision as non-severe impairments. Second, Plaintiff complains that the ALJ failed to give controlling weight to the opinions of two treating physicians. Third, Plaintiffs asserts that the ALJ failed to incorporate these impairments and opinions into the RFC assessment. Fourth, Plaintiff contends that the ALJ improperly relied on the VE's response to a hypothetical question incorporating an inaccurate RFC. Each of these arguments will be addressed in turn.

> **1. The ALJ did not err in finding that Plaintiff's diabetes and blurry vision were not severe impairments.**

The second step in the disability evaluation process requires the ALJ to consider the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii); Soc. Sec.

Rul. 96-3p, 1996 WL 374181 at *1 (July 2, 1996). An impairment is considered severe if it "significantly limits an individual's physical or mental ability to perform basic work activities," which are defined as "those abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). Basic work activities include the following: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for hearing, seeing and speaking; (3) understanding, carrying out and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. *Id.*

Because the Sixth Circuit has interpreted "the step two severity regulation as a '*de minimis* hurdle' in the disability determination process," meant to screen out totally frivolous claims, the severity of the impairment is "liberally construed in favor of the claimant" at this step in the analysis. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (citations omitted); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985); *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 428 (6th Cir. 2007). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Higgs*, 880 F.2d at 862 (citing *Farris*, 773 F.2d at 90).

If the ALJ finds that at least one of the claimant's alleged impairments is severe in nature, the claim survives the step two screening process. 20 C.F.R. § 404.1520(a)(4). Because the Regulations instruct the ALJ to consider both severe and non-severe impairments in the remaining steps of the disability determination analysis, any impairment erroneously labeled as "non-severe" will not be ignored altogether. 20 C.F.R. §

6

404.1545(a)(2). For this reason, the Sixth Circuit has consistently held that an ALJ does not commit reversible error when he or she decides that some of claimant's impairments are not severe, but finds that other impairments are severe and proceeds with his or her analysis. *See, e.g., Maziarz v. Sec'y Health & Human Serv.*, 837 F.2d 240, 244 (6th Cir. 1987) ("Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error.").

Plaintiff argues that the ALJ should have found her blurry vision to be a severe impairment.[2] (Doc. # 24 at 1-3). She claims to have a "documented vision impairment of 20/200 and 20/100 uncorrected, correctable only to 20/40." (Doc. # 22 at 2). Although Plaintiff attempts to support this assertion with several citations to the record, none of them actually discuss her vision impairment. (Tr. 149, 155, 158, 430 and 838). Apart from Plaintiff's own testimony that "she likes to read, [but] she can hardly do this because her eyes are blurry," the Court is aware of only one passing reference to blurry vision in the medical record. (Tr. 49 and 734). This minimal evidence is hardly sufficient to establish the existence of a severe impairment.

Plaintiff also takes issue with the ALJ's decision to classify her diabetes as a non-severe impairment. (Doc. # 22 at 2-3). She claims that the ALJ unfairly based this decision

---

2) Although most of Plaintiff's argument focuses on her diabetes and blurry vision, she suggests that the ALJ also erred in classifying her depression/PTSD as a non-severe impairment. (Doc. # 24 at 2). This is simply an incorrect characterization of the record. In the Hearing Decision, the ALJ found Plaintiff's history of bipolar disorder and anxiety disorder with PTSD features to be severe impairments. (Tr. 44).

on the fact that "she could not afford her medication consistently and did not consistently observe a diabetic diet." (Doc. # 24 at 3). Although the ALJ observed that Plaintiff was not taking her medication or following a diabetic diet, she did not do so simply to chastize Plaintiff for her failure to follow doctor's orders. (Tr. 46). Rather, the ALJ emphasized that Plaintiff felt well and denied episodes of hypoglycemia, even when she was not trying to control her condition, indicating that Plaintiff's diabetes does not significantly limit her ability to perform basic work activities. (*Id.*).

Even if Plaintiff is correct in claiming that her blurry vision and diabetes qualify as severe impairments, the ALJ's failure to make such a finding is harmless. After all, the ALJ found that Plaintiff had several other severe impairments, including a history of coronary artery disease (status post-stenting) with carotid artery stenosis without infarction, COPD (chronic obstructive pulmonary disease), acromioclavicular joint crepitus of the right shoulder, degenerative disc disease of the cervical spine, status post-bilateral carpal tunnel release, history of bipolar disorder, anxiety disorder with post-traumatic stress disorder (PTSD) features and pain disorder (*Id.*). Having determined that Plaintiff suffered from severe impairments, the ALJ had to consider both severe and non-severe impairments in completing the disability determination analysis. Thus, any error at Step 2 of the analysis was harmless.

    **2.    The ALJ did not err in giving less than controlling weight to the opinions of Plaintiff's treating physicians.**

In social security disability cases, the Commissioner depends on medical sources "to provide evidence, including opinions, on the nature and severity of [claimant's] impairment(s)." 20 C.F.R. § 404.1527(d)(2). Such evidence may come from treating

sources, non-treating sources and/or non-examining sources. 20 C.F.R. § 404.1502. A treating source is the claimant's "own physician, psychologist, or other acceptable medical source who provides [claimant], or has provided [claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." *Id.*

A treating source's opinion is entitled to controlling weight if it is "'well supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)). If a treating source's opinion is not entitled to controlling weight, the ALJ must consider the following factors in order to determine how much weight to give the opinion: (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; and (5) the specialization of the treating source. *Id.* The ALJ must also provide "good reasons" for the weight given to a treating source's opinion. 20 C.F.R. § 404.1527(d)(2); *see also* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996) (explaining that the ALJ's decision "'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record'").

This "treating physician rule" only applies to *medical* opinions. While a medical expert may opine "on issues such as whether [claimant's] impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments," as well as claimant's residual functional capacity or the application of vocational factors, such opinions are not entitled to controlling weight. *See* 20 CFR § 404.1527(d)(2) (stating that "the final responsibility for deciding these issues is reserved to the Commissioner"). "Although the

9

ALJ may not entirely ignore such an opinion, his decision need only explain the consideration given to the treating source's opinion." *Turner v. Comm'r of Soc. Sec.*, 2010 WL 2294531, at *4 (6th Cir. June 7, 2010).

Plaintiff complains that the ALJ failed to give controlling weight to the opinions of two of her treating physicians, Drs. Lohman and Dunaway. Both physicians completed Residual Functional Capacity questionnaires, in which they limited her to less than sedentary level work. (Tr. 51 and 727-36). As explained above, because these questionnaires focused on Plaintiff's residual functional capacity, rather than medical matters, the ALJ was not obligated to give controlling weight to their opinions. She simply had to explain how she considered these opinions. The Court finds that the ALJ did as required. In the hearing decision, she stated that she gave these opinions little weight because "[b]oth assessments were not supported by the overall record, including their own treatment records." (Tr. 51). The ALJ further explained:

> The claimant is clinically mild with a modest treatment regimen. She has a history of not being compliant with medication and she has had no referrals for physical therapy, chiropractic treatment, pain management, or injections and no further surgery has been recommended for the claimant. Her mental health treatment is very minimal and her recent treatment does not show she is prescribed any psychotropic medication. Furthermore, her testimony and function/daily activity reports show she can perform a myriad of daily activities with minimal limitations.

(*Id.*). Accordingly, the Court finds no error in the ALJ's failure to give controlling weight to the opinions of Drs. Lohman and Dunaway.

    **3.    The ALJ gave due consideration to Plaintiff's non-severe impairments and the opinions of Drs. Dunaway and Lohman in rendering an RFC assessment.**

A residual functional capacity ("RFC") is "an administrative assessment of the extent

to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Soc. Sec. Rul. 96-8p, 61 Fed. Reg. 34474, 34475 (Jul. 2, 1996). Stated another way, the RFC is "what an individual can still do despite his or her limitations." *Id.* "In assessing the total limiting effects of [the claimant's] impairment(s) and any related symptoms, [the ALJ] will consider all of the medical and nonmedical evidence" in the record. 20 C.F.R. § 404.1545(e). The ALJ is only required to incorporate those limitations that she finds credible in the RFC assessment. *Irvin v. Social Sec. Admin.*, 573 F. App'x 498, 502 (6th Cir. 2014) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

Plaintiff maintains that the ALJ should have incorporated the functional impairments caused by her blurry vision and diabetes into the RFC assessment. Specifically, she believes that the RFC should have factored in her need for three days off of work per month due to side effects.[3] Plaintiff also insists that the RFC assessment should have limited her to less than sedentary work, as Drs. Lohman and Dunaway recommended.

---

3) This requirement seems to have originated from a hypothetical posed by Plaintiff's former representative at the administrative hearing. (Tr. 85-86). Specifically, the representative asked whether there were jobs that an individual with Plaintiff's RFC, who also needed "to miss work on a consistent basis more than three times a month," could perform. (*Id.*). The VE answered in the negative. (*Id.*).

The Court was able to find only one basis for this hypothetical. At the administrative hearing, Plaintiff testified that she had four or five "bad" days per month. (Tr. 81). However, the ALJ found that her testimony regarding the intensity, persistence and limiting effects of her symptoms was not entirely credible. (Tr. 44-46). After all, Plaintiff has long managed many activities associated with daily living, even though she does not consistently comply with her diabetes treatment and has only recently sought therapy for her mental issues. (*Id.*). Nevertheless, Plaintiff maintains that such time off should have been incorporated in the RFC so she could deal with "her diabetes and/or severe mental health issues which include past history of suicidal attempts, and ongoing current family stress including a daughter's drug addiction issues." (Doc. # 22 at 3).

11

However, for reasons explained above, the ALJ found that these limitations were not fully credible. Thus, she was not obligated to incorporate these limitations into the RFC assessment.

Moreover, the record reflects that the ALJ reviewed all of the evidence in the record. (Tr. 44-46). She identified the available sources of information, explained how she weighed those sources and factored the information that she found to be credible into the RFC assessment. (*Id.*). Specifically, she noted that Plaintiff's conditions were stable and being treated conservatively, if at all. (*Id.*). She also pointed out that Plaintiff seemed able to manage many activities associated with daily living. (*Id.*). Because the RFC finding is supported by substantial evidence, there is no error in the ALJ's Step 4 analysis.

4. **The ALJ did not err in relying on the VE's response to an appropriate hypothetical question**

In posing a hypothetical question to a vocational expert, an ALJ must accurately describe Plaintiff's functional limitations. *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779. (6th Cir. 1987). However, the ALJ need only incorporate those limitations she finds to be credible. *Casey*, 987 F.2d at 1235.

Plaintiff insists that the ALJ's hypothetical question was deficient because it did not incorporate the limitations caused by her blurry vision and diabetes, nor did it include the limitations identified by Drs. Dunaway and Lohman. However, for reasons explained above, the ALJ did not find those limitations to be credible. Thus, the Court finds no error in the ALJ's Step 5 analysis.[4]

---

4) Plaintiff makes another fleeting reference to the hypothetical posed by her former representative at the administrative hearing, claiming that it was based on an accurate RFC. (Doc. # 22 at 3). However, it incorporated limitations that the ALJ did not find credible. (Tr. 48-50 and 85-86). Under

### III. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)   The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2)   Plaintiff's Motion for Summary Judgment (Doc. # 22) is hereby **DENIED**;

(3)   Defendant's Motion for Summary Judgment (Doc. # 27) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 17th day of March, 2016.

Signed By:
*David L. Bunning*   DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\Ashland\14-156 MOO re Dyer.wpd

---

these circumstances, the Court finds no error in the ALJ's failure to rely on that hypothetical.